## John F. Ashton *v.* Heinke P. Ashton
### (11009)

Dupont, C. J., Heiman and Schaller, Js.

Argued April 26—decision released June 29, 1993

*Abraham I. Gordon,* with whom were *Ronald D. Japha* and, on the brief, *Richard S. Scalo,* for the appellant (defendant).

*Mark F. Katz,* with whom, on the brief was *Howard T. Owens, Jr.,* for the appellee (plaintiff).

Heiman, J. The defendant, Heinke P. Ashton, appeals from the judgment of the trial court dissolving her marriage to the plaintiff. She claims that the

judgment is fatally flawed because the trial court improperly (1) divided the parties' assets, (2) awarded time limited alimony, (3) precluded the defendant from introducing expert testimony at trial, and (4) accepted financial information submitted by the plaintiff that was speculative and based its financial award on this information. We affirm the judgment of the trial court.

The following facts found by the trial court are necessary to a resolution of this appeal. The plaintiff and the defendant were married on March 17, 1980.[1] This was the second marriage for the plaintiff and the first for the defendant. The plaintiff had four children from his

---

[1] Prior to their wedding, the parties entered into a prenuptial agreement. The prenuptial agreement established the plaintiff's financial responsibilities to the defendant in the event of separation for more than sixty days, whether followed by legal action for separation, divorce or other termination of marriage: "John agrees to pay Heinke alimony of $500 per month for the number of calendar months during which the parties remained married prior to said separation but in no event for a period exceeding ten years from the date payments of alimony commence hereunder. Such alimony payments shall cease upon John's or Heinke's death or Heinke's remarriage. Heinke confirms that she is presently employed, has always worked and intends to continue to do so."

Additionally, the agreement also contained a provision that Heinke would vacate any "premises owned by John which were occupied by her prior to such separation immediately upon commencement of the aforesaid alimony."

The agreement also contained a clause providing that Heinke "agrees to accept the provisions of [the alimony paragraph] hereof for her benefit in full and complete discharge and satisfaction of any and all obligations which John may ever have to Heinke for the payment of alimony, support and/or maintenance. . . ."

The plaintiff, as a part of his prayers for relief, sought judgment in accordance with the terms of the prenuptial agreement. The defendant contended that the agreement was entered into without the plaintiff's full disclosure of his income and that the agreement was thus unenforceable. The trial court agreed with the defendant, found that the plaintiff had not made full disclosure concerning his earnings and that the enforcement of the agreement would thus work an injustice. Accordingly, the trial court declined to enforce the prenuptial agreement and determined that it would decide the issues of alimony and other financial issues pursuant to the General Statutes. The plaintiff has neither appealed nor cross appealed from the trial court's judgment.

first marriage. The children's ages at the time of the dissolution ranged from age twenty-one to thirty-two years. The defendant has no children. At the time of the dissolution, the plaintiff was sixty-two years of age while the defendant was fifty-one years of age.

At the time of the marriage, the plaintiff was not employed. He had left his employment as a director and general counsel of Barnes Engineering Company and was contemplating a second career as either an investment manager or a stockbroker. Although at the time of the marriage the plaintiff lived on capital and gifts and loans from his family, he had considerable assets in the form of investments, a house in Greenwich and real property in Cornwall that had been in his family since 1942.

The defendant was employed at the time of the marriage as a sales assistant at Shearson Lehman in Greenwich and earned approximately $10,000 per year. She brought no substantial assets to the marriage. Despite the fact that the agreement recited that the parties contemplated that the defendant would continue to be employed during the marriage, at some point, with the plaintiff's acquiescence, the defendant left active employment outside the home.

During the early period of the marriage, the plaintiff earned relatively insignificant amounts of money from employment. Between 1980 and approximately 1983, the plaintiff earned on the average about $725 per year. From 1984 through 1987, he worked as an investment advisor and had an average earned income of approximately $18,000 per year. In 1988, the plaintiff earned $67,900, and in 1990 he earned $132,538. On the basis of the plaintiff's testimony and financial affidavit, the court found that the plaintiff would earn approximately the same amount in 1991 as he had in 1990.

On his financial affidavit dated August 21, 1991, the plaintiff showed assets with a total cash value of $3,263,680.62. Among the assets was real property located on Bermuda Road, Westport, which the plaintiff had purchased during the marriage in 1982 for $325,000. The purchase price was paid in part with the plaintiff's assets. He secured financing for the balance. He held title in his name alone. The value of the property at the time of the dissolution was $910,000. The mortgage on the property totaled approximately $750,000, leaving equity of $160,000. The value of the property had appreciated about $585,000.

Having heard the evidence, the trial court reviewed the exhibits and the financial affidavits and determined that its decision as to alimony, counsel fees and division of property was to be based on the criteria set forth in General Statutes §§ 46b-81[2] and 46b-82.[3]

[2] General Statutes § 46b-81 provides in pertinent part: "(a) At the time of entering a decree annulling or dissolving a marriage . . . pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-82 provides in pertinent part: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony should be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

The trial court divided the parties' assets and, as a part of its distribution, permitted the plaintiff to retain ownership of the real property in Westport and Cornwall. The trial court determined that the Cornwall property had been in the plaintiff's family since 1942, that the property had not been acquired during the marriage, and that the defendant made no contribution to its acquisition, preservation or appreciation in value. The trial court determined, however, that the husband was to pay to the wife the sum of $300,000 within thirty days as a "lump sum property distribution." In addition she was to receive her choice of one of two 1980 Cadillac automobiles as her separate property. The trial court also divided the parties' personalty. By way of alimony, the court ordered the plaintiff to pay to the defendant the sum of $32,000 per year in equal monthly installments continuing until "(a) the death of either of the parties; (b) the wife's remarriage or her cohabitation under the Connecticut General Statutes; or (c) ten (10) years from the date of the dissolution, whichever event first occurs." The trial court further determined that "[i]n order to give the wife incentive to return to work the court orders that the husband may not seek a modification based on a material change in circumstances in the wife's earnings until the wife earns in excess of $20,000 per year."

After making additional orders concerning health insurance, the trial court finally ordered the plaintiff to pay the defendant's counsel fees in the amount of $25,000. This appeal by the defendant followed.

I

The defendant first asserts that the trial court improperly divided the parties' assets. She posits that the trial court failed to give consideration to her noneconomic as well as her economic contributions to the acquisition and preservation of assets during the mar-

riage. She asserts that the trial court failed to give her credit for giving up her own career plans and her plans to have children, to cook the plaintiff's meals, to wash and iron his shirts, to maintain and clean his house, to socialize for business purposes and to take care of his ailing aunt's and mother's personal needs. Further, she claims that the trial court should have, but did not, consider the Cornwall property as available for distribution to her. We are unpersuaded.

In analyzing this claim, we first note what findings the trial court did not make. The trial court did not find that the defendant gave up her career and became a homemaker to assist her husband's endeavors. The trial court also made no finding as to why the defendant left employment, despite finding that she left work shortly after the marriage and that the prenuptial agreement provided that she would continue working during the course of the marriage. Further, the trial court made no finding that the defendant had made any contribution by her noneconomic endeavors to the acquisition or preservation of assets.

The defendant failed to file a motion for articulation directed toward these claims that were not a part of the trial court's findings in its memorandum of decision. It is the appellant's burden to supply us with a record adequate to provide a proper review, and, "[w]here the factual basis of the court's decision is unclear, proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . ." (Internal quotation marks omitted.) *Berlin* v. *Commissioner of Revenue Services,* 207 Conn. 289, 295, 540 A.2d 1051 (1988); *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 295–96, 533 A.2d 208 (1987); *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983); see also Practice Book § 4051.

Contrary to the defendant's assertion, the trial court did consider the Cornwall property in the division of the assets.[4]

In addressing the issue of division of the marital assets, the trial court is vested with wide discretion. *Blake* v. *Blake,* 207 Conn. 217, 229, 541 A.2d 1201 (1988). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." Id.; *Puris* v. *Puris,* 30 Conn. App. 443, 449, 620 A.2d 829 (1993); *Graham* v. *Graham,* 25 Conn. App. 41, 47, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). "The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact." *Graham* v. *Graham,* supra; *Ippolito* v. *Ippolito,* 28 Conn. App. 745, 751, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992).

The weight to be accorded each of the factors enumerated in General Statutes § 46b-81 calls on the trial court to exercise its discretion. *Weinstein* v. *Weinstein,* 18 Conn. App. 622, 633, 561 A.2d 443 (1989). "The trial court is not required to give equal weight to each of the specified criteria it considers in determining its award, nor is any single criterion preferred over the others." *Graham* v. *Graham,* supra, 45; *Puris* v. *Puris,* supra, 449–50. A trial court is free to weigh the relevant statutory criteria without having to set forth in detail in its memorandum of decision the importance or weight that it has ascribed to each of the statu-

[4] The defendant filed a motion for articulation regarding her claim that the trial court failed to consider the Cornwall property available for distribution in the dissolution action. The trial court, in its articulation, clearly set forth that it considered the Cornwall property available, but determined that the property was to remain the sole and exclusive property of the plaintiff.

tory factors. *Barnes* v. *Barnes,* supra; *Puris* v. *Puris,* supra; *Ippolito* v. *Ippolito,* supra.

We remain unpersuaded that this case presents to us one of the "exceedingly rare instances . . . in which there has been such a manifest abuse of discretion that we should find error in the trial court's [division of the parties' assets]." *Tutalo* v. *Tutalo,* 187 Conn. 249, 252, 445 A.2d 598 (1982). "It is often the case that the appellant, in arguing abuse of discretion, would in reality have this court vary either the weight placed upon specific statutory criteria or the weight placed upon documentary or testimonial evidence. . . . Such an excursion by this court into the domain of the trier is unacceptable." (Citation omitted.) *Carpenter* v. *Carpenter,* 188 Conn. 736, 741–42, 453 A.2d 1151 (1982).

Our review of this matter reveals that the trial court properly weighed and considered the various factors mandated by General Statutes § 46b-81 and did not abuse its discretion in allocating the division of the assets of the parties. *Puris* v. *Puris,* supra, 450. The defendant's claim to the contrary is without merit.

## II

The defendant next asserts that the trial court improperly awarded her time limited alimony without a factual predicate for the limitation. We disagree.

The defendant posits that the award of time limited alimony is improper because the trial court failed to take into account the defendant's health problems, her lack of employment "during her peak earning years . . . at the plaintiff's insistence to tend to home and marriage." She further posits that at the end of this ten year period she will be an "aged and infirm woman over 61 years of age."

The short answer to these evidentiary claims is that the trial court did not find any of those facts now

asserted by the defendant as the basis on which she now claims that the time limited alimony is improper. Nor did the defendant seek to require the trial court to include or exclude these facts in its findings by a motion for articulation. *Barnes* v. *Barnes,* supra.

While "[u]nderlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency" and it is thus generally employed for rehabilitative purposes, other reasons may also support this type of alimony award. (Internal quotation marks omitted.) *Ippolito* v. *Ippolito,* supra, 752. Such other purposes include providing interim support until a future event occurs that makes such support less necessary or unnecessary. Id.; *Wolfburg* v. *Wolfburg,* 27 Conn. App. 396, 400, 606 A.2d 48 (1992).

When awarding time limited alimony, the trial court need not make a detailed finding justifying its award. *Ippolito* v. *Ippolito,* supra, 751. "Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Citation omitted; internal quotation marks omitted.) Id., 751–52.

The court here ordered the plaintiff to pay to the defendant a lump sum property distribution of $300,000 and alimony in the amount of $32,000 per year in equal monthly installments and continuing until "(a) the death of either of the parties; (b) the wife's remarriage or her cohabitation under the Connecticut General

Statutes; or (c) ten (10) years from the date of the dissolution, whichever event first occurs." We note that the defendant herself requested that the court award time limited alimony. In her proposed orders, the defendant sought, in addition to being awarded one of the parties' houses, that the plaintiff pay alimony to her "in the amount of Fifty Thousand and 00/100 ($50,000) Dollars per annum for ten (10) years" if she were awarded the Bermuda Road residence or that the plaintiff pay a lump sum of $500,000 and alimony in the amount of "Fifty Thousand and 00/100 ($50,000) Dollars per annum for ten (10) years" if she were awarded the Cornwall property. Even though her claim for time limited alimony is tied to other claims for relief, she nonetheless recognized that ten years would be an appropriate period of time to receive alimony.

Unlike in *Ippolito* v. *Ippolito,* supra, 750–53, the trial court's factual findings here do support its award of time limited alimony. The court contemplated that the defendant would return to work. The court stated that "[i]n order to give the wife incentive to return to work the court orders that the husband may not seek a modification based on a material change in circumstances in the wife's earnings until the wife earns in excess of $20,000 per year." In addition, the trial court had before it the defendant's request for time limited alimony. The record thus reflects the basis to support the trial court's award of time limited alimony for rehabilitative purposes. Her claim to the contrary is without merit.

### III

The defendant next asserts that the trial court improperly precluded her from introducing expert testimony at trial. We disagree.

An understanding of the following additional facts is necessary for a resolution of this claim. On Aug-

ust 19, 1991, the defendant filed a notice of intention to call three expert witnesses. One of these witness was a representative of the firm of Quantum Financial, Inc., of Boulder, Colorado.[5] The plaintiff objected to allowing the witness to testify. In the defendant's offer of proof to have the witness permitted to testify, the defendant asserted that the witness had testified to a "great extent in the courts of Colorado regarding financial planning and projections of divisions of assets and payment of alimony over a period of time, in the nature of an economist testifying in a personal injury case as to future expenses and damages and income projections." The defendant also asserted that the witness would "discuss the claims that [she] has for distribution of assets and alimony, so Your Honor can see the net effect on the parties over their lifetimes if certain awards are made, and it would be a benefit of the court in arriving at a reasonable and fair distribution of assets under the statute."

The plaintiff objected to allowing the witness to testify pursuant to Practice Book § 220 (D).[6] The court sustained the plaintiff's objection. The court found that the defendant's request to call the expert did not comply with § 220 (D), that the rule of practice was mandatory, and that the plaintiff was not notified of the expert until August 19, 1991, two days before trial. The court noted that the trial would be delayed if the expert testimony was admitted since the plaintiff would need an opportunity to depose the witness and may need to call expert testimony of his own to rebut the witness' testimony.

Practice Book § 220 (D) provides in relevant part that "any plaintiff expecting to call an expert witness at trial

---

[5] The plaintiff objected only to allowing the witness from Colorado to testify.

[6] The plaintiff also objected that the witness would testify to nothing more than conjecture and surmise. The trial court responded that if this was his only objection, it would overrule the objection.

shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown.''

Pursuant to Practice Book § 220 (D), the trial court had broad discretion to allow the defendant's expert to testify despite noncompliance with this rule of practice, if good cause had been shown. *Knock* v. *Knock,* 224 Conn. 776, 782, 621 A.2d 267 (1993); *Berry* v. *Loiseau,* 223 Conn. 786, 800, 614 A.2d 414 (1992). The trial court is in the best position to assess the intent behind the behavior of the offending party and, therefore, its decision must be given great weight and deference. *Berry* v. *Loiseau,* supra, 801. ''In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision.'' *Knock* v. *Knock,* supra, 787.

The trial court did not abuse its discretion in sustaining the plaintiff's objection to allowing the testimony of the defendant's expert witness. The trial court found that the defendant failed to demonstrate that there was good cause to allow the expert to testify. It properly exercised its discretion pursuant to Practice Book § 220 (D) in precluding the expert from testifying. The defendant's claim to the contrary is without merit.

## IV

The defendant's final assertion is that the trial court improperly accepted financial information submitted by the plaintiff that was speculative and based its financial award on this information. We are unpersuaded.

The following additional facts are necessary to a resolution of this claim. The defendant cites to instances in the plaintiff's financial affidavit where the term "estimated" was used.[7] The defendant asserts that the trial court improperly relied on these "estimated" figures in its financial deliberations and when awarding alimony and distributing the parties' property. She asserts that the financial information relied on by the court in making its property distribution and alimony award was based solely on speculation because of the estimated figures in the financial affidavit. We do not agree with the defendant's assertion that the financial orders are speculative and also we are unpersuaded that the trial court acted improperly in relying on the financial affidavit and the other evidence before it.

The mandate requiring the filing of sworn financial statements is found in Practice Book § 463.[8] That rule

---

[7] In the plaintiff's affidavit, he listed other income of $2075 monthly as 1991 estimated, total 1991 estimated monthly net income as $9540.06, the estimated values of two motor vehicles, thirteen items of estimated monthly expenses totaling $2953 for the Westport real property, seven items of estimated monthly expenses totaling $1178 for the Cornwall property, and estimated monthly expenses totaling $5409 for personal items for himself and an adult son, James. In addition, the plaintiff listed an undetermined portion of $533 of automobile expenses listed as being reimbursed by his employer and an undetermined value for furniture and furnishings.

[8] Practice Book § 463 provides in pertinent part: "At the time a motion concerning alimony, support or custody is filed, or at the time a dissolution of marriage . . . is claimed for a hearing, the moving party shall file a sworn statement substantially in accordance with a form prescribed by the chief court administrator, of *current income, expenses, assets and liabilities,* and pertinent records of employment, gross earnings, gross wages

requires that the parties supply information relating to their current financial situation. A review of the plaintiff's financial affidavit shows clearly that he complied with the rules of practice. Here, the plaintiff, being self-employed, provided information concerning his earnings for the period immediately preceding the dissolution proceedings and then, with appropriate footnotes to his financial statements, projected those earnings into the future. The relevant material in determining alimony and division of property is the current income, expenses and assets of the parties. *Watson* v. *Watson*, 20 Conn. App. 551, 559, 568 A.2d 1044, rev'd in part, 221 Conn. 698, 607 A.2d 383 (1990). Here, the trial court had before it the information necessary to make an informed judgment.

The defendant's reliance on *Watson* v. *Watson*, supra, for the proposition that estimates may not be used in determining the financial status of the parties is clearly misplaced. *Watson* v. *Watson*, supra, 558, involves a party who was not paying certain expenses, such as mortgage payments, taxes or insurance, at the time of the dissolution. On his financial affidavit, however, the defendant projected these items as to what they would be if, sometime in the future, he moved out of his parents' house and acquired a house of his own. In refusing to permit consideration of projected expenses we said, "[if] a court could consider such projected expenses, a party would be able to insulate portions of his income from distribution by masking them as necessary to pay nonexistent expenses." Id., 559. Nothing in the record before us supports a claim that the plaintiff was not in fact paying all of the expenses and receiving all of the income that he listed on his financial affidavit. Thus, *Watson* v. *Watson*, supra, is inapposite.

and all other income. The opposing party shall file such sworn statements at least three days before the date of the hearing on any of the above matters. . . ." (Emphasis added.)

As we have previously stated, the standard of review in domestic relations cases is that we will not reverse a trial court's rulings with respect to financial orders unless the court incorrectly applied the law or could not reasonably conclude as it did. *Kane* v. *Parry,* 24 Conn. App. 307, 314, 588 A.2d 227 (1991); *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 302, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). The trial court has the best opportunity to observe the parties, pass on the credibility of the witnesses, and interpret the evidence. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990); *Caristia* v. *Caristia,* 22 Conn. App. 392, 395, 577 A.2d 1096 (1990). It could properly base its financial orders on the information provided to it in the plaintiff's financial affidavit.

On the basis of the record before us, we cannot conclude that the trial court abused its discretion in basing its orders on the plaintiff's financial affidavit.

The judgment is affirmed.

In this opinion the other judges concurred.