[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner, Henkie P. Ashton, requests a new trial in the dissolution of marriage action, which had been tried in 1991 under the caption Ashton v. Ashton, FA 90 0110414, Judicial District of Stamford/Norwalk at Stamford; specifically seeking a new trial with regard to the issues property division, non-monetary contributions and fault.
 I.
The decree of dissolution in the matter of Ashton v. Ashton,
FA 90 0110414, Judicial District of Stamford/Norwalk at Stamford, was entered on October 15, 1991.
The Appellate Court summarized the facts found by the trial court and the awards made by the trial court in Ashton v.Ashton, 31 Conn. App. 736, 627 A.2d 943 (1993), as follows:
"The plaintiff and the defendant were married on March 17, 1980. This was the second marriage for the plaintiff and the first for the defendant. The plaintiff had four children from his first marriage. The children's ages at the time of the dissolution ranged from age twenty-one to thirty-two years. The defendant has no children. At the time of the dissolution, the plaintiff was sixty-two years of age while the defendant was CT Page 12217 fifty-one years of age.
"At the time of the marriage, the plaintiff was not employed. He had left his employment as a director and general counsel of Barnes Engineering Company and was contemplating a second career as either an investment manager or a stockbroker. Although at the time of the marriage the plaintiff lived on capital and gifts and loans from his family, he had considerable assets in the form of investments, a house in Greenwich and real property in Cornwall that had been in his family since 1942.
"The defendant was employed at the time of the marriage as a sales assistant at Shearson Lehman in Greenwich and earned approximately $10,000 per year. She brought no substantial assets to the marriage. Despite the fact that the agreement recited that the parties contemplated that the defendant would continue to be employed during the marriage, at some point, with the plaintiff's acquiescence, the defendant left active employment outside the home.
"During the early period of the marriage, the plaintiff earned relatively insignificant amounts of money from employment. Between 1980 and approximately 1983, the plaintiff earned on the average about $725 per year. From 1984 through 1987, he worked as an investment advisor and had an average earned income of approximately $18,000 per year. In 1988, the plaintiff earned $67,900, and in 1990 he earned $132,538. On the basis of the plaintiff's testimony and financial affidavit, the court found that the plaintiff would earn approximately the same amount in 1991 as he had in 1990.
"On his financial affidavit dated August 21, 1991, the plaintiff showed assets with a total cash value of $3,263,680.62. Among the assets was real property located on Bermuda Road, Westport, which the plaintiff had purchased during the marriage in 1982 for $325,000. The purchase price was paid in part with the plaintiff's assets. He secured financing for the balance. He held title in his name alone. The value of the property at the time of the dissolution was $910,000. The mortgage on the property totaled approximately $750,000, leaving equity of $160,000. The value of the property had appreciated about $585,000.
"The trial court divided the parties' assets and, as a part of its distribution, permitted the plaintiff to retain ownership CT Page 12218 of the real property in Westport and Cornwall. The trial court determined that the Cornwall property had been in the plaintiff's family since 1942, that the property had not been acquired during the marriage, and that the defendant made no contribution to its acquisition, preservation or appreciation in value. The trial court determined, however, that the husband was to pay to the wife the sum of $300,000 within thirty days as a `lump sum property distribution.' In addition she was to receive her choice of one of two 1980 Cadillac automobiles as her separate property. The trial court also divided the parties' personalty. By way of alimony, the court ordered the plaintiff to pay to the defendant the sum of $32,000 per year in equal monthly installments continuing until `(a) the death of either of the parties; (b) the wife's remarriage or her cohabitation under the Connecticut General Statutes; or (c) ten (10) years from the date of the dissolution, whichever event first occurs.' The trial court further determined that `[i]n order to give the wife incentive to return to work the court orders that the husband may not seek a modification based on a material change in circumstances in the wife's earnings until the wife earns in excess of $20,000 per year.'
"After making additional orders concerning health insurance, the trial court finally ordered the plaintiff to pay the defendant's counsel fees in the amount of $25,000."
 II.
The defendant in the dissolution action, Heinke P. Ashton, has now brought the present petition for a new trial.
She has made a number of claims as a basis for her petition, including, inter alia, the following, which the court now sets out in summary fashion.
a. The trial court limited the hearing on dissolution to three days, depriving her of the opportunity to present pertinent evidence.
b. The trial court made an erroneous finding of a $750,000.00 mortgage on the Westport property, instead of an actual $75,000.00 mortgage. She claims that if the court considered that there was a $750,000.00 mortgage on the property, then the court was considering only an equity of $160,000 in a house that presumably had a value of $910,000.00, the order CT Page 12219 therefore, did not address the $675,000.00 equity discrepancy.
c. The court based its decision on the gross assets of the parties and erred when finding that the assets of the plaintiff were $3,263,680.62, because the court did not deduct both the plaintiff's and the defendant's liabilities when considering the net assets of the parties for distribution under the requirements of General Statutes § 46b-81. The defendant's car repair expenses and car rental expenses not considered and no allowance was made for these substantial items.
d. The court made no allowance for the fact that the defendant worked for the plaintiff in his office during the marriage at no compensation other than IRA contributions.
e. The court in fact upheld the property distribution of the prenuptial agreement even though the court held that agreement unenforceable and did not consider the factors in General Statutes § 46b-81. The court, in fact, enforced the agreement by giving the defendant five times what she would have received under the agreement (the court determining the value of the estate to be $3,263,680.62 at the time of the distribution, approximately five times the value of the estate at the time of the marriage which value the court determined to be $690,000.00; while awarding alimony at a rate approximately five times that allowed in the prenuptial agreement.)
f. The court in its articulation said "the Cornwall property was solely in the husband's name at the time of the dissolution." However, because the defendant trusted the plaintiff, there was absolutely no property in the defendant's name or even in joint ownership, including the marital residence which was acquired during the marriage.
g. The court in its articulation claimed the Cornwall property stipulation included all the property, but the defendant only agreed to stipulate to the value of the 334 acres of forest land.
h. Although the defendant may have made no monetary contribution to the Cornwall property, in fact the defendant made, the same non-monetary contributions to the Cornwall property (their home away from home on the weekends) as she did to the marital property. Unlike any other case in the history of Connecticut, the wife was given less than 7% of the total assets. CT Page 12220
i. The defendant's counsel made concession to the court and plaintiff's counsel that the defendant was unaware of and did not agree to.
j. That the petitioner, since the hearing, has newly discovered the following evidence:
1. The plaintiff had options to purchase shares in Stuyvesant Capital Management Corporation, which were not included in his financial affidavit.
2. The plaintiff will receive payment in case of retirement or sale of Stuyvesant Capital Management Corporation and plaintiff's percentage payout would be approximately "20.2%," according to notes found in a trash basket.
3. Concerning fine arts and furniture, the plaintiff had a 1984 appraisal of $250,000 from Bartlett Appraisers. The defendant had ordered an update for the trial, but the plaintiff received the update valuation of $395,000.00 before the hearing. Nevertheless, the plaintiff listed the value as "undetermined at this time." The trial court ruled that all the furniture and fine arts the parties had received as gifts from the plaintiff's family, were to remain the property of the plaintiff. The defendant attempted to introduce the $395,000.00 appraisal at trial, but was not given the opportunity to do so.
k. As to the marital home, while a stipulated value of $910,000.00 was agreed to between the parties, the plaintiff's financial affidavit showed a value of only $835,000.00. Despite this, the court relied on the figure in the plaintiff's affidavit in arriving at the total value of all assets. No ruling was made as to the $75,000.00 discrepancy.
1. As to the Cornwall property, the parties arrived at a stipulation of the value of "334 acres Cornwall property" to be $2,250,000.00. The court in its articulation stated that the value of the property in Cornwall was $2,250,000.00. This was an error, since the value of the stipulation to which the defendant agreed was the 334 acres of forest land. Actually, there were three other properties. The plaintiff's affidavit listed the property value at $2,000,000.00. There is $1,119,000.00 missing from that affidavit. Residence A, 78 Flat Rocks Road not included. This property had a value of $389,000.00. Residence B, CT Page 12221 74 Flat Rocks Road was not included. The plaintiff calculated the value of this residence to be $810,000.00. There was also a 4.6 acre building lot which was not included, which could be valued at $150,000.00.
m. The plaintiff did not disclose the value of his 50% interest in a script by Ring Lardner and his interest for film rights of book by Peter Mueller. He did not list his gun collection with a value $50,000. Nor did he did not list the value of his ham radio stations.
n. In addition, the plaintiff did not list the value of the timber crop on the 334 acres of timber land.
o. The plaintiff was aware of sales of comparable large tract of land sales in Cornwall and Salisbury, which showed property values substantially greater than the valuation for the Cornwall property.
p. The plaintiff defrauded the defendant by misinforming the defendant of the value of the Cornwall property, to which the defendant stipulated because she believed the plaintiff.
q. The court stated that it had considered the Cornwall property and that the property should remain with the plaintiff for the reason that the property was in the plaintiff's name and had been in the plaintiff's name throughout the marriage.
r. Despite the conclusion of the court, the defendant did work for the plaintiff from 1981 through 1989: as treasurer of Ashton Company; making double entry book-keeping; doing library research; making Rotary entries; preparing medical claim filings for the plaintiff's mother and aunt; bookkeeping for mother and aunt; doing filing; and engaging in extensive entertaining. None which was considered by the Court.
s. The plaintiff concealed life insurance of $300,000.00, which he did not disclose in his affidavit. Although the defendant requested to be made beneficiary of life insurance to secure the alimony, no order was made by the court.
 III.
The respondent, John F. Ashton, has filed a motion to dismiss based on the running of the statute of limitations. CT Page 12222 The statute of limitations for a petition for a new trial is set forth in General Statutes § 52-582, which reads:
 Petition for new trial. No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of.
As indicated above, the decree of dissolution was entered on October 15, 1991. This petition was served on the respondent on October 17, 1994; two days after the expiration of the time within which to bring a petition for a new trial.
The petitioner claims that this action survives the motion to dismiss for lack of jurisdiction because of the provisions of General Statutes § 52-593. The statute reads:
 Sec. 52-593a. Right of action not lost where process served after statutory period. When.
 (a) Except in the case of an appeal from an administrative agency governed by section 4-183, a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to an officer authorized to serve the process or is personally delivered to the office of any sheriff within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery.
 (b) In any such case the officer making service shall endorse under oath on his return the date of delivery of the process to him for service in accordance with this section.
The petitioner testified that after the clerk of the court had issued the writ for her as a pro se party on October 14, 1994, she delivered the writ, summons and complaint to the Office of the Sheriff for Fairfield County at Bridgeport and requested that the process be served by Deputy Sheriff Ronald Kadar.
Sheriff Kadar's return of service reads as follows:
 STATE OF CONNECTICUT ss: WESTPORT OCTOBER 17, 1994 COUNTY OF FAIRFIELD CT Page 12223
 Then and there, by virtue hereof, I made service of the within and foregoing original Writ, Summons, Petition for New Trial and Certification by leaving a true and attested copy with and in the hands of JOHN P. ASHTON 16 Bermuda Road, Westport, CT. The within and foregoing is the original Writ, Summons, Petition for New Trial and Certification with my doings endorsed thereon.
 ATTEST: RONALD Z. KADAR ----------------------- Ronald Z. Kadar Deputy Sheriff Fairfield County
The generally followed interpretation of General Statutes § 52-593 was set forth by the court, Judge O'Neil, in Buck v.Esman, No. 36 55 84 (Nov. 19, 1993) 1993 Ct. Sup. 10081, (Superior Court, Judicial District of Hartford-New Britain at Hartford)
"By common law a suit is commenced in this state by service of the writ and not by delivery of the writ to the officer.Gates v. Bushnell, 9 Conn. 530, 334. Of course, the common-law rule has been modified by C.G.S. 52-593a.
"The only way an attorney may extend the statute of limitations under C.G.S. 52-593a(a) is to be sure that the process is delivered to the server `within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery.' In our case that was all done. What was not done was what is required under C.G.S. 52-593a(b) which states, `In any such case the officer making service shall endorse under oath on his return the date of delivery of the process for service in accordance with this section.' That the Sheriff did not do; nor was he asked to do it before the action was dismissed.
"The court believes that subsections (a) and (b) must be read together first, because they are parts of the same section, second because in subsection (b) the expression `any such case' refers to subsection (a) and third, because the requirement of an endorsement under oath shows the seriousness of the requirement in order to support any subsection (a) action. Thus the court concludes that subsection (a) cannot be read alone and is CT Page 12224 ineffective if subsection (b) is not complied with."
In our present matter, this court reserved decision on the motion to dismiss to allow the petitioner to submit an amended return, either by the sheriff in the office of the Sheriff of Fairfield County who might have received the process or by Sheriff Kadar, if he possibly had received the process on or before October 15, 1994.
Because the petitioner was acting pro se, the court conditionally received testimony concerning the petitioner's claims in addition to any claims of fraud on the part of the respondent in the initial dissolution action, subject to an amended or substitute return being filed. Several times during the protracted hearings, the court reminded the petitioner of the need to establish the elements of General Statutes § 52-593 in order to overcome the issue of lack of jurisdiction raised by the motion to dismiss.
The petitioner has failed to present an amended return of service or to submit evidence that any sheriff was asked to do so.
The court therefore, must grant the respondent's motion to dismiss the petition insofar as it makes any claim for a right to a new trial for dissolution on any basis other than alleged fraud committed by the respondent as the plaintiff in the dissolution action.
 IV.
This court assumes that under the doctrine of Kenworthy v.Kenworthy, 180 Conn. 129, 131, 429 A.2d 837 (1980) and Billingtonv. Billington, 220 Conn. 212, 595 A.2d 1377 (1991), a petition for a new trial in a dissolution action may be considered even after the time allowed under the relevant statute of limitation has passed, if allegations of fraud in the original action can be established.
Absent any need for due diligence, there remain three conditions necessary to a trial court's granting of relief from a dissolution judgment secured by fraud: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must be clear proof of the perjury or fraud. (3) There must be a substantial likelihood that CT Page 12225 the result of the new trial will be different. Billington v.Billington, 220 Conn. 212, 218, 595 A.2d 1377 (1991).
"`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.' Alexander v. Church,53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard,196 Conn. 584, 587, 494 A.2d 1199 (1985); Miller v. Appleby,183 Conn. 51, 54-55, 438 A.2d 811 (1981)."Billington v. Billington,220 Conn. 212, 217, 595 A.2d 1377 (1991).
This court has reviewed the entire transcript of the hearing on dissolution as well as the claims made by the petitioner in her petition, the testimony and other evidence presented at the hearings on this petition, and the briefs submitted by the parties.
An examination of the claims of the petitioner, most of which have been listed above, and which the petitioner has set forth as the grounds for a new trial, shows that the majority of them are based on dissatisfaction with the conclusions and orders of the trial court. These conclusions and orders have been upheld by the Appellate Court (Ashton v. Ashton, 31 Conn. App. 736,627 A.2d 943 (1993)) and the Supreme Court has denied certification. (Ashton v. Ashton, 228 Conn. 901, ___ A.2d ___ (1993)).
Moreover, the complaint that the court considered there to be only $160,000.00 in equity in the Westport home because the court concluded that the mortgage on that property was $750,000.00 rather than $75,000.00 is not borne out by the record. The trial court in its memorandum of decision stated:
 The property known as 16 Bermuda Road, Westport, was purchased during the marriage by the husband in his name for $325,000.00 in 1982. All of the funding for that purchase came from his own assets or he arranged the financing. The property is presently worth $910,000.00 which is the stipulated value of the property. There is equity based on an existing mortgage of $750,000.00. The value of the CT Page 12226 property has increased $585,000.00 without anything substantial being done to the premises.
 The husband shall keep this property free and clear of the wife's interest and he shall hold her harmless on all mortgages and other liabilities connected with said premises.
It is obvious from an examination of the financial affidavits and the testimony at the trial, that the court knew and understood that there was only a $75,000.00 mortgage and the respondent testified that the mortgage was limited to $75,000.00. The $750,000.00 figure is a typographical error; the court understood that there was a substantial increase in the value of that home during the marriage to the extent of $585,000.00, but nonetheless awarded the home to the husband. The assertion that there was an equity of $160,000.00 in that house was the Appellate Court's and not the trial court's.
The petitioner's assertion that the respondent misled her and the court concerning the value of the Cornwall property is also not borne out by the evidence. The transcript clearly shows that parties stipulated to the value of all the Cornwall property, including the lots with buildings on them and the separate 4.6 acre lot. The transcript indicates the court understood that was so and notations made by the trial court on court file documents also indicate the court understood the stipulation applied to all of the property and not just the acres of forest land. Moreover, the transcript indicates that the petitioner very well understood that the stipulation of $2,250,000.00 was for all of the property located in Cornwall (See, e.g., Transcript, 23 August 1991, p. 564).
Evidence presented at this hearing, including the testimony of Bruce Hunter, whom the petitioner had engaged to appraise the property, would suggest she understood his testimony, if he were called to testify, would be that all the property in Cornwall had a market value of $2,510,000.00 and that she understood the respondent had an appraisal of $2,000,000.00 from Arthur Olds, an appraiser. It is clear that the stipulated value was a compromise of these estimates.
While the respondent may have denigrated the extent of the petitioner's non-monetary contributions to the marriage, the petitioner had ample opportunity to provide that information to CT Page 12227 the trial court and did testify to the claims she now makes. There is no indication that there was any fraud by the respondent on these issues and that the petitioner relied on such fraudulent representations.
While the respondent did not place any dollar amount on the fine arts and furniture, the petitioner was allowed to explore this aspect at the trial. The respondent claimed that any valuation was based on examinations of the material during the 1970's and any update by appraisers was done by applying a percentage increase to those evaluations without any personal examination. The petitioner put a figure on the value of these items and the issue was fully explored at the trial. The petitioner did not call any expert to testify on this aspect and the only expert that the court refused to hear would not have been one making an appraisal of these items.
Moreover, no matter what the value, it is apparent from the court's decision that it considered the items part of the respondent's family heritage and not marital assets subject to division. The petitioner has failed to establish that any statement by the respondent as to value was made with the intent of inducing her reliance thereon; and that she relied on the statement to her detriment.
As to the respondent's interest in Stuyvesant Capital Management Corporation, there was evidence at the trial of his compensation and that he had a profit sharing plan and how it was funded. The evidence indicated there was no deferred compensation plan other than the profit sharing plan. That organization's CEO, Donald Von Wedel, testified at this hearing that there was no buyout agreement or option to purchase available to the respondent. The respondent testified that the note retrieved by the petitioner was mere speculation on his part that was never effectuated. The petitioner presented no evidence to the contrary.
At this hearing, the respondent testified that the interest in the Lardner script and the film rights to the book by Mueller had no value and the petitioner presented no evidence to the contrary. There was ample testimony and evidence as to the Ham radio units and the value of those units at the dissolution trial, where the petitioner requested that she be assigned one of the units. CT Page 12228
The petitioner at this hearing presented no evidence that the timber crop on the Cornwall property could be profitably harvested or had any commercial value, nor has she presented any evidence that evidence that timber on the Cornwall property had some commercial value would have resulted in a different decision by the trial court.
Finally, the trial court was informed by the respondent that he had term life insurance. The real complaint of the petitioner is not that the respondent fraudulently concealed that information from her, but that the court did not make her a beneficiary of the insurance to secure the alimony payments.
In sum, the petitioner's principal objections appear to have been directed at the interpretation that the trial court put on the evidence and testimony and her belief that the trial court did not give adequate consideration to her non-monetary contributions to the marriage, to her assistance with the respondent's business functions, and to her efforts towards the maintenance of the real property. These issues have been noted by the Appellate Court which has supported the trial court's findings and orders. This court has no authority, because of lack of jurisdiction, as addressed above, to grant a new trial on these issues.
However, as to the allegations of fraud which have survived the motion to dismiss, the petitioner has failed to establish by credible evidence her burden of proving fraud on the part of the respondent at the dissolution hearing that would lead this court to determine that there was clear proof of the perjury or fraud or that there is a substantial likelihood that, giving the most favorable consideration to her claims, the result of any new trial would be different, considering the approval given to the trial court's assignment of property and financial orders.Billington v. Billington, supra, 218.
On this basis, the petition for a new trial is denied and judgment on that issue is entered in favor of the respondent.
NIGRO, J. CT Page 12229