[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. It is found that all the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably and the marriage is ordered dissolved for that reason.
II. Pre-Marital property.
CT Page 837
A. Plaintiff.
1. Plaintiff testified that at the time of her marriage to defendant she had funds totalling $105,000. Following defendant's suggestion she invested a portion of said sum in 100 shares of Aetna stock, $20,000 in gold and $20,000 in an annuity. The annuity was later converted to $35,000 in cash which plaintiff used as a down payment on real estate in Nantucket, Massachusetts. It is difficult to follow the trail of the balance of plaintiff's pre-marital assets. At any rate, following the sale of the Nantucket property each party received $68,000 after paying the I.R.S., attorney's fees and other debts. Plaintiff has remaining the sum of $45,000 deposited in the Savings Institute which she claims is pre-marital property. To simplify this issue it is noted that defendant stated that the division of the Nantucket proceeds was a "done deal".
The court finds that the sum of $45,000 held by plaintiff is a pre-marital asset not to be considered when the estate of the parties is divided.
2. Plaintiff also maintains that the $17,600 in her Aetna Reinvestment Fund which is noted on her financial affidavit represents passive growth from pre-marital funds and should not be considered part of the marital estate.
The court has examined its notes in this issue and finds that on the morning of November 28, 1995 plaintiff testified that "I have no money on my financial affidavit except $45,000 from Nantucket that could be considered pre-marital."
Above and beyond plaintiff's declaration the court recalls addressing a similar issue in the matter of Grosch v.Grosch Hartford Superior Court No. FA 91 0391743 which it decided on November 17, 1992. [See 7 Conn. L. Rpt. 614
(Hartford 1992)]. It noted there that according to Family Lawand Practice Arnold H. Rutkin General Editor Vol. 3 § 3704 [6] income from separate property "will typically be classified as marital while increase in value may not." This court also cited the case of MacDonald v. Macdonald [MacDonald] 532 A.2d 1046
(Me. 1987) p. 1049 to the effect that income during the marriage from non-marital property "is part of the marital estate." Lastly, the court does not consider Ashton v. Ashton 31 Conn. App. 736
CT Page 838 (1993), cited by plaintiff in her proposed orders, to be applicable in this matter.
Plaintiff's claim on this issue is consequently rejected.
B. Defendant
Throughout the trial and in his proposed orders defendant made various claims concerning the extent of his pre-marital estate, stressing in particular his equity in a home in Granby, Connecticut initially owned by him and his wife from a previous marriage. At the time of his divorce in 1978 his one-half interest was valued in his financial affidavit at $9,100. In a similar affidavit filed on November 19, 1980, seven months after his present marriage, he valued her one-half interest at $12,862. During this period he had acquired the one-half interest of his former wife and later in 1980 conveyed that interest to plaintiff.
The court considers defendant's conveyance to plaintiff to constitute a gift to the marital estate of said one-half interest and rejects in toto any and all claims of defendant that it be considered pre-marital property.
III. The Pensions of the Parties
The court faces a knotty problem relating to the pensions of the parties.
In 1973 plaintiff began her employment at Aetna Life Insurance Co. (hereinafter Aetna) and was terminated in December 1994 as part of a cost cutting program. She has received weekly severance pay since that time which will cease at the end of January, 1996. At that time she will receive a pension from Aetna in the monthly amount of $674.
In 1972 Defendant commenced work at Aetna which continued until December 1991 when he was terminated for the same reasons as plaintiff. He received weekly severance pay for two years and thereafter has received a monthly pension in the amount of $977.
Defendant's pension provides further that in the event he predeceases plaintiff, she will upon his death receive a monthly pension in the amount of $485 until April 1, 2006 and CT Page 839 $364 monthly thereafter for the remainder of her life. There is no similar provision in plaintiff's pension.
On plaintiff's financial affidavit she made no mention of the value of her pension, stating only that it was "in pay status as of February 1, 1996." In turn defendant on his financial affidavit recited only that he was presently receiving the gross weekly amount of $226 from his pension.
During the course of the trial defendant's counsel sought to establish the present value of plaintiff's interest in both her own pension and that of the Defendant through the testimony of the defendant whom he represented to be familiar with the methods of calculating pension values because of the nature of his work at Aetna. After reviewing the educational background of the defendant and the particulars of this employment the court, over the objection of plaintiff, permitted the defendant to testify on this issue.
Concerning his own pension, defendant testified that if he died in March, 1996, the present value of plaintiff's remainder interest in his pension would be $72,000. He further calculated that the present value of plaintiff's pension was $114,843. Defendant's position is that in distributing the marital estate of the parties the sum of the above two figures, i.e. $186,843, should be included as part of plaintiff's share.
Defendant did not calculate the present value of his own pension although he did state that "it would cost somewhat less than $114,843 to pay for an annuity to give me what I'm getting from my pension."
In making its ruling on this issue the court is mindful of and has considered the following.
A. The recent decision in Krafick v. Krafick 234 Conn. 743, (August 8, 1995) that a pension benefit is a marital asset to which the trial court should assign an appropriate valuation.
B. The credibility of witnesses and the weight to be given their testimony is within the discretion of the trial court. Fucci v. Fucci 179 Conn. 174, 183 (1979). CT Page 840
C. The trial court is not obligated to accept the testimony of a witness, even though it has not been contradicted. Turgeon v. Turgeon 190 Conn. 269, 279 (1983),Grittin v. Nationwide Moving and Storage Co. 187 Conn. 405,422, (1982).
D. In determining the weight to be given to the testimony of a witness, the court may consider its importance to the party testifying. Holden Daly Connecticut Evidence
Sec. 63f p. 172.
After applying the above stated principles to the evidence before it, the court concludes first that the testimony of the defendant concerning the value of plaintiff's interest in both her own pension and that of the defendant is not credible.
Secondly, it notes that plaintiff is presently 54 years of age and the defendant 51, that the life expectancy of a female is several years longer than that of a male, that defendant is presently receiving $977 a month from his pension, that plaintiff will receive $674 per month from her pension commencing February 1, 1996 and that plaintiff will only receive residual payments from defendant's pension if she survives him. It concludes from the above figures that plaintiff's pension has less value to her than does defendant s pension to him. It concludes further that the value of plaintiff's residual interest in defendant's pension is, at the very least, highly speculative, involving as it does the life expectancy of not one but two individuals. It notes also that plaintiff in her proposed orders makes no claim to a share of defendant's present pension.
In closing the book on this issue the court orders that defendant have no share or interest in plaintiff's pension, nor plaintiff in that of defendant, excepting however the remainder interest which she has held for some period of time.
IV. The Marital Estate of the Parties
 Plaintiff:
 1/2 interest in No. 206 Farmcliff Drive Glastonbury, CT
CT Page 841
 Total Value $230,000 Less 109,375 -------- Total Equity $120,625 1/2 interest $60,313
 1988 Chevy Blazer 3,500 1972 Mercedes 350 S.L. — Savings Institute (C/A) 717 Savings Institute ($45,000 premarital prop. ) — Passbook Savings 944 Aetna Reinvestment Plan 17,600 Federated Services Co. 10 Aetna I.S.P. 106,524 I.R.A. 4,000 Household Furniture etc. — -------- Total $193,608Defendant:
1/2 interest in equity in No. 206 Farmcliff Drive, Glastonbury, CT $ 60,312 1996 Jeep Val. $28,077 Loan Bal. $26,000 eq. 2,077 1983 Audi 500 Glastonbury Bank Trust 515 *Life Insurance — Northeastern face value $120,000 C.S.V. 10,028 Aetna Life Casualty Incentive Savings Total $205,533 — $11,091 pre-marital 194,442 -------- Total $257,846
Total Marital $451,454
 *Because of the order of the court in Article IX A, this policy was not considered part of the distributable marital estate.
V. A Review and Evaluation of the Evidence as it Relates to the Provisions of Sec. 46b — 81c C.G.S.
The plaintiff's wife, who is 54 years of age, and the defendant husband, who is 51, were married on April 19, 1980 15 years ago. This is plaintiff's third marriage. Her first CT Page 842 marriage ended in divorce and her second husband died October 25, 1978 leaving her a home and various life insurance policies. Defendant had two minor children by a previous marriage which ended in divorce on June 7, 1978. There are no children issue of this marriage.
The parties had first met in 1978 at Aetna where they were both employed. Prior to that time plaintiff had graduated from high school and had attended Asnuntuck Community College where she took courses in psychology and organizational development. Defendant in turn had graduated from Queen's College in 1965 with a B.A. Degree and from St. John's University with an M.B.A. degree in 1969. He later served in the U.S. Army from 1969 to 1972 and was employed at both the continental and Phoenix Insurance Companies before beginning his employment at Aetna.
Following their marriage the parties resided in defendant's home in Granby untll [until] 1984 when they moved to a new home in Glastonbury. The parties have been separated since 1990 when plaintiff left the family home. The present dissolution action has been pending since December, 1992.
Employment
Plaintiff was employed as an educational consultant at Aetna until December, 1994 when her position was eliminated. At the present time she is receiving gross weekly severance pay amounting to $612 with a weekly net after the usual deductions of $411. She also reports net weekly earnings of $61 from a part time position for a total present net weekly income of $772. At the end of January, 1996 this severance pay will cease, but at that time she will begin receiving pension payments from Aetna amounting to $156 weekly.
Defendant's position at Aetna was terminated in December 1991. From then until May 1994 he received severance pay and unemployment compensation. Since then he has been employed by Sheet Metal Workers Union No. 40 where he supervises the operation of their health and welfare departments. He reports gross weekly earnings of $1111 with a weekly net after the usual deductions of $701. He also receives a net weekly pension from Aetna amounting to $130 for a total weekly net income of $831. CT Page 843
Health
Both parties appear to be in reasonably good health, and there is not evidence to the contrary.
Fault
A review of the court's notes reveals the following conflicting view points of the parties on this issue.
A. Plaintiff
Plaintiff testified that her marital difficulties began shortly after her marriage in 1980 when she awoke to find her bed surrounded with flowers and defendant asking her "How does it feel to be a dead person?" There followed in 1981 an incident where defendant locked her in the garage in her nightgown and in 1982 another when her car was bumped by defendant in a fit of anger. On another occasion in 1983 during an argument defendant jumped on the hood of her car and rolled off moments later, severely frightening her. In the following years their relationship continued to deteriorate. In plaintiff's words "Little by little I didn't think I belonged in the house." Plaintiff left the family home in March 1990. For two years thereafter plaintiff suggested to defendant that they seek marriage counselling. Defendant's response was "Your problems are in your head."
B. Defendant
Defendant's response to plaintiff's recitation of the various occurrences described above was "These incidents never happened." He took no responsibility for the breakdown of the marriage, stating simply "She left me."
After reviewing and weighing all of the evidence on this factor, the court finds the testimony of plaintiff to be the more credible, and considers that responsibility for the irretrievable breakdown of the marriage rests with defendant.
Other Factors
Defendant has greater vocational skills than does plaintiff and has a greater opportunity than does she for the future acquisitions of capital assets and income. CT Page 844
On the evidence the court further considers that plaintiff's contributions in the acquisition, preservations or appreciation in value of their present marital estate exceeded that of defendant.
Conclusion
After sifting through and weighing all of the evidence as it pertains to the various provisions of Sec. 46b — 81c C.G.S., and after being given particular considerations to such predominating factors as the comparative vocational skills, income and employability of the parties, their comparative opportunities for the future acquisition of capital assets and income, their comparative contributions to the marital estate and the causes for the dissolution, the court concludes that their marital estate should be divided as follows:
Plaintiff 60%
Defendant 40%
VI. The Distribution of the Marital Estate
 Total Marital Estate $451,454 Plaintiff's share 60% 270,872 Defendant's share 40% 180,582
 Plaintiff shall take and have:
 1988 Chevy Blazer 3,500 1972 Mercedes 350 S.L. — Savings Institute (C/A) 717 Savings Institute ($45,000 pre-marital prop) — Passbook Savings 944 Aetna Reinvestment Plan 17,600 Federated Services Co. 10 Aetna I.S.P. 106,524 I.R.A. 4,000 Household furniture etc. — Amount due from defendant 137,577 -------- Total due plaintiff $270,872
CT Page 845
Defendant shall take and have:
 Total equity in No. 206 Farmcliff Drive Glastonbury, CT $120,625 1996 Jeep — total equity 2,077 1983 Audi 500 Glastonbury Bank Trust 515 Life Insurance — Northwestern C.S.V. 10,028 Aetna Life and Casualty Incentive Savings Total $205,533 — $11,091 pre-marital 194,442 -------- Sub Total $318,159 Less amount due plaintiff 137,577 -------- Total due defendant $180,582
VII. Supplemental Orders relating to the Distribution of the Marital Estate.
A. The court directs that plaintiff be awarded the sum of $137,577 from defendant's Aetna Life and Casualty Incentive Savings Plan, and that a Qualified Domestic Relations Order (QDRO) enter reflecting this order.
B. Plaintiff is ordered to convey to defendant all her right, title and interest in No. 206 Farmcliff Drive, Glastonbury, CT. Defendant in turn will hold plaintiff harmless with regard to all mortgages, taxes and other encumbrances on said premises.
C. Each of the parties shall execute all documents necessary to carry out the orders of this Court.
VIII. Alimony
In making the following order concerning alimony, the court has considered all of the provisions of Sec. 46b-82, C.G.S. including the awards which it has previously made pursuant to Sec. 46b-81 C.G.S. It is ordered that defendant shall pay as alimony to plaintiff the sum of $175 per week until such time as plaintiff shall attain the age of 62 (April 2, 2003) and be eligible for social security.
This order shall be non-modifiable as to term only, but shall sooner terminate upon the remarriage of the plaintiff or CT Page 846 upon the death of either party. Said order shall also be suspended, reduced or terminated at the discretion of the court as provided in Sec. 46b-86 (b) C.G.S.
During such time as defendant shall be required to pay alimony, the parties shall annually, commencing April 15, 1996, exchange federal income tax returns.
IX. Other Orders
A. Life Insurance
The defendant shall maintain his insurance policy with Northwestern in the present face amount of $120,000 with plaintiff as irrevocable beneficiary during such time as defendant shall be obligated to pay alimony to the plaintiff. The face amount of said policy may be reduced so long as there remains an amount sufficient to pay the balance of the alimony payments due plaintiff. In making this order the court notes that defendant's current financial affidavit reflects a $31.59 weekly payment by him for life insurance.
B. Health Insurance
No order is made on this issue.
C. Furniture and Other Household Items
The personal property located at No. 206 Farmcliff Drive, Glastonbury, CT shall be equally divided between the parties. This court shall retain jurisdiction with reference to said property until such time as the parties have agreed upon an equitable division of the same.
D. Counsel Fees.
In view of the other financial orders of the court, no award of counsel fees is made to either party.
E. Plaintiff shall be responsible for one half of any federal or state capital gains tax incurred by the parties with reference to the sale of real estate formerly owned by them in Nantucket, Massachusetts.
F. Liabilities
CT Page 847
Each of the parties shall be solely responsible for all liabilities shown on his or her financial affidavit and shall hold the other party harmless in that regard.
G. Maiden Name
Plaintiff's maiden name of Kathleen Carrigan is ordered restored to her.
John D. Brennan State Judge Referee