## LUBA HILL *v.* JAMES T. HILL
### (11464)
### (12066)

DUPONT, C. J., and O'CONNELL and SPEAR, Js.

Argued February 17—decision released July 19, 1994

*John R. Williams,* with whom, on the brief, were *Sue Wise* and *Diane Polan,* for the appellant (plaintiff),

*Richard L. Albrecht,* with whom, on the brief, were *Richard G. Kent* and *Jocelyn L. Birnbaum,* for the appellee-appellant (defendant).

*Luba N. Hill,* pro se, the appellee (plaintiff), filed a brief.

O'CONNELL, J. This case involves two appeals from the same marriage dissolution action. In appeal no. 11464, the plaintiff claims that (1) the procedures followed by the trial court deprived her of her right to due process of law under both the state and federal constitutions, and (2) the trial court abused its discretion in ordering the trial to begin, in dividing assets without current financial affidavits, in awarding joint custody without a custody study, in conducting ex parte proceedings off the record, and in failing to protect the plaintiff from misconduct by her attorney. In appeal no. 12066, the defendant claims that a postjudgment order pertaining to a motor vehicle violated the automatic stay.

## I

The central issue in the plaintiff's appeal involves the trial court's denial of her request for a continuance. The following facts are necessary for the disposition of this issue. On June 4, 1991, the plaintiff instituted an action seeking dissolution of the parties' fifteen year marriage, sole custody of their four minor children, child support, alimony, division of assets and sole ownership of the marital residence. On November 28, 1991, Allen S. Mall became the third attorney to rep-

resent the plaintiff. By agreement of the parties, the trial of the case was scheduled for January 3, 1992. Because of a subsequent order requiring both parties to attend a January 30, 1992 conference with a family relations officer, the trial was rescheduled for March 10, 1992. On March 3, 1992, the plaintiff's counsel appeared in court seeking a continuance "to at least May, if not June." The reasons proffered for the continuance were to obtain discovery of certain of the defendant's American Express records and because the plaintiff disagreed with the family relations officer's refusal to complete a full custody study. In response, the trial court, *Ballen, J.,* scheduled a hearing for the following day to resolve the question of whether a full custody study was necessary and would thus warrant granting the plaintiff's request for a continuance.

During the March 4 hearing, Judge Ballen heard testimony from the plaintiff and a family relations officer and thereafter denied the continuance on the basis of the family relations officer's recommendation that a full custody report was not necessary. There is, however, disagreement as to what Judge Ballen intended would take place on March 10. When the parties appeared on March 10, Judge Ballen and defense counsel expected that the trial was to commence, but Mall protested that he understood that the trial would not go forward until he had received the American Express information. Accordingly, Mall made it clear that he was not ready to commence trial. Judge Ballen told Mall that he could present evidence concerning the American Express records at a later time but that he must proceed to trial that day on other issues. Mall then asked Judge Ballen if he could at least have until the afternoon to prepare for trial. Judge Ballen granted the request and then referred the case to Judge Karazin for trial to begin later that same day.

At the start of trial that afternoon, Mall informed Judge Karazin that the case was not ready for trial because Judge Ballen's order to commence the trial was conditioned on the plaintiff's receipt of the American Express records. The defendant disagreed and Judge Karazin recessed so that he personally could ask Judge Ballen the substance of his order. Thereafter, Judge Karazin reconvened court and stated that Judge Ballen had ordered the trial to begin that day as long as the plaintiff could present her evidence concerning the American Express records when they arrived. Despite this concession, Mall informed the court that he was not prepared to start the trial and that he did not think it prudent to begin his case without his client, who was so upset about the morning's proceedings that she had left the courthouse and would not return. After inquiry by Judge Karazin, Mall admitted that the presence of his client was not essential for him to go forward, and Judge Karazin told Mall to begin putting on evidence. A short colloquy between Mall and Judge Karazin ensued, which ended with Mall's leaving the courthouse, despite several warnings from Judge Karazin that such behavior would have serious consequences. Immediately following Mall's departure, defense counsel moved for a nonsuit, which was granted. Judge Karazin then heard the case on the defendant's counterclaim and rendered judgment thereon. It is from that judgment that the plaintiff now appeals. Additional facts are set forth in the course of our discussion.

We commence our analysis by considering the plaintiff's argument that the trial court improperly denied her request for a continuance and compounded the impropriety by proceeding to judgment in the absence of both the plaintiff and her counsel. "[T]he matter of a continuance is traditionally within the discretion of the trial judge, which will not be disturbed absent a clear abuse. . . . It must be shown that the trial judge

acted arbitrarily and substantially impaired defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion. The test is a stringent one." (Citations omitted; internal quotation marks omitted.) *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985). Not every denial of a request for more time violates due process. *Avery* v. *Alabama,* 308 U.S. 444, 60 S. Ct. 321, 84 L. Ed. 377 (1940); *State* v. *Bethea,* 167 Conn. 80, 84, 355 A.2d 6 (1974).

The Supreme Court has been "especially hesitant to find abuse of discretion where the court has denied a motion for continuance made on the day of trial." *Thode* v. *Thode,* 190 Conn. 694, 697, 462 A.2d 4 (1983); *Vossbrinck* v. *Vossbrinck,* 194 Conn. 229, 232, 478 A.2d 1011 (1984), cert. denied, 471 U.S. 1020, 105 S. Ct. 2048, 85 L. Ed. 2d 311 (1985); *Kinney* v. *Kinney,* 5 Conn. App. 484, 485, 500 A.2d 569 (1985), cert. denied, 199 Conn. 804, 506 A.2d 146, cert. denied, 497 U.S. 818, 107 S. Ct. 78, 93 L. Ed. 2d 33 (1986). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *State* v. *McKnight,* 191 Conn. 564, 576, 469 A.2d 397 (1983); *State* v. *Jeustiniano,* 172 Conn. 275, 285, 374 A.2d 209 (1977). We agree with the general principle implicit in the plaintiff's argument that when a court considers a request for a continuance, it must pay special attention to the facts of the individual case; but the plaintiff fails to refer to us any case in which the individual facts resulted in a continuance. In all of the cases cited by the plaintiff, the trial court's denial of a continuance was upheld on appeal.

In the present case, the plaintiff, now represented by new counsel, contends that when Mall appeared in court on March 10, he did not know that it was for trial and supports this contention with transcript references. On the other hand, defense counsel argues that the same transcript references gave the plaintiff clear notice that the case was assigned for trial on March 10. Examination of the transcripts is not dispositive of the issue. We were not there and the flavor of the court's remarks cannot be appreciated from reading the cold black and white lines of a transcript. The nuances of voice inflection, gestures and body English are invisible on the pages of a printed transcript. It is not lost on us, however, that two of the three persons present during the colloquy (i.e., Judge Ballen and the defendant's counsel) unequivocally understood that the trial was to start on March 10. Only one of the three, Mall, did not interpret Judge Ballen's remarks as setting a firm March 10 trial date. The defendant's brief states in a reference to the transcript that "[i]t is difficult to imagine more clear and direct pronouncements of the court's intention to proceed with trial on the scheduled date."[1] We cannot ignore this impression that the

---

[1] We note that after Judge Ballen's conclusion during the March 4 hearing that a custody report was not necessary and that the trial should go forward, the plaintiff reiterated his claim that the trial should not start without the American Express records. In response, Judge Ballen stated that the trial is "down for March 10, and I'm going to say that come March 10, subject to the court's availability, and it may be that we get started the prior week on other matters and we can't go ahead on March 10, but if in fact we can go ahead on March 10, and if in fact you have your American Express information, we'll go ahead on March 10." Mall then asked, "[I]f I don't receive [the American Express records] by this Friday, can I tell the court that, so I can avoid a trip up here next week?" Judge Ballen responded by saying that he wanted the parties in on Friday, March 6, or March 10 to bring him up to date on the status of the records.

Judge Ballen's remarks are best understood when read in the context of what transpired during the entire two days of hearings, during which time the parties had engaged in heated discussion over the relevance of these records as well as whether the plaintiff was using the absence of the

court's words made on defense counsel. We also cannot ignore Judge Ballen's response to Judge Karazin's inquiry regarding the order that trial was to commence that afternoon.

We emphasize that trial courts are afforded wide discretion in matters of continuances and our review of such matters is governed by an abuse of discretion standard. *State* v. *Beckenbach,* supra, 198 Conn. 47. "The [appellate] court's function is not to determine if the trial court could have reached a conclusion other than the one reached but whether the court could reasonably have reached the conclusion it did. An appellate court should 'guard against' substituting its own interpretation of the evidence on the cold record for that of the trial court on the live record. A finding cannot be rejected just because the 'reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder.' " C. Tait, Connecticut Appellate Practice and Procedure (2d Ed. 1993) § 7.6 (b), citing *Sportmen's Boating Corp.* v. *Hensley,* 192 Conn. 747, 751, 474 A.2d 780 (1984), and *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). In deciding whether the trial court could reasonably conclude as it did, we must follow the unquestioned rule that great weight is due the action of the trial court and every reasonable presumption should be allowed in favor of the correctness of its

---

records as a way to buy time. Throughout argument, Judge Ballen stated on numerous occasions his belief that the plaintiff did not need all the records to proceed and that the plaintiff's recent deposition of the defendant had provided the plaintiff with enough information regarding the defendant's recent American Express charges to proceed. It is clear that Judge Ballen was seeking to accommodate the plaintiff's need for all relevant information and the defendant's request that the trial commence as scheduled. In addition, Judge Ballen stated near the end of the hearing: *"All right, all right. Why don't we let it go then March 10, as originally scheduled. Hopefully somebody will get this American Express information."* (Emphasis added.) We read this statement as a clear warning that the March 10 trial was not conditioned on the receipt of the American Express records.

action. *Askinazi* v. *Askinazi,* 34 Conn. App. 328, 342, 641 A.2d 413 (1994); *Ashton* v. *Ashton,* 31 Conn. App. 736, 742, 627 A.2d 943 (1993), cert. denied, 228 Conn. 901, 634 A.2d 295 (1994).

The wide latitude we accord to trial court decisions is especially applicable in cases, as here, where the meaning of spoken words cannot easily be gleaned from transcript pages. We were not present at the hearings and therefore cannot appreciate the true flavor of those proceedings. We will defer to the trial court's broad discretion in such matters. In the present case, we conclude that the trial court's order denying the plaintiff's request for a continuance, but permitting the plaintiff to present the American Express records when they became available, did not constitute an abuse of discretion.

Having determined that the trial court properly denied the plaintiff's request for a continuance, we turn next to her argument that the trial court violated her due process rights by proceeding to trial in her absence. The record indicates that she was present during the hearing before Judge Ballen and that she had a full and fair opportunity to take part in the trial. Instead of taking advantage of this opportunity to be heard, she elected to forgo her right to be present during trial.

A party has a right to be present at all phases of his civil litigation. Conn. Const., art. I, § 19. This right may be waived, however. *Rozbicki* v. *Huybrechts,* 218 Conn. 386, 393, 589 A.2d 363 (1991). Even in a criminal case, a defendant may waive his constitutional right to be present either "by his conduct, misconduct or his voluntary and deliberate absence from the trial without good cause." *State* v. *Drakeford,* 202 Conn. 75, 79, 519 A.2d 1194 (1987). "The right to be present . . . may be lost by consent, waiver or misconduct . . . . Waiver need not be express. It may be implied from the totality of

acts or conduct of a defendant . . . ." Id. These principles apply with equal force in civil litigation. *Rozbicki* v. *Huybrechts,* supra, 393–94.

"Permitting a defendant unilaterally to prevent his case from going forward would give him the license to defy the law with impunity, and in the process, to paralyze the proceedings of courts . . . ." *State* v. *Drakeford,* supra, 202 Conn. 81. When the plaintiff voluntarily left the courthouse upon learning that Judge Karazin insisted on going forward, she waived her right to be present. She charted her course and cannot now complain if that course caused her to founder on rocks that she had not foreseen. See *Johnson* v. *United States,* 318 U.S. 189, 201, 63 S. Ct. 549, 87 L. Ed. 2d 704 (1943).

Because the plaintiff's absence was wholly voluntary, cases that she cites involving involuntary absence due to circumstances beyond a party's control are inapposite. Despite the rule of law that imputes a lawyer's acts to his client; *Allen* v. *Nissley,* 184 Conn. 539, 542–43, 440 A.2d 231 (1981); it is nonetheless easy to have compassion for the innocent client who suffers because of her lawyer's ill conceived conduct. This, however, is not one of those cases. Here, the plaintiff herself must shoulder the culpability of her own actions in leaving the courthouse and refusing to return so that the orderly process of justice could go forward.[2]

The plaintiff also claims that the trial court violated her due process rights by "permitting" her privately

---

[2] Judge Karazin expressed a measure of sympathy at a hearing on a motion to open the judgment. "I was hoping you'd come back the next day. I was hoping somebody was going to come back . . . . I did not render the decision immediately. I gave what I thought was a chance . . . to your side . . . to come in and do something. Nobody did anything so I then decided the case . . . . I waited a full week before the decision. I waited for somebody to do something. Why didn't you people come in the day after?"

retained counsel to walk out of the courtroom despite his having been warned that the case would go forward with or without him.[3] Despite this warning, plaintiff's

---

[3] The colloquy between Judge Karazin and Mall was as follows:

"Mr. Mall: Okay. I am going to absent myself from the proceedings, Your Honor, with Your Honor's permission.

"The Court: Well, you are not either going to get my permission or my nonpermission, but I am telling you that I am going ahead with the case.

"Mr. Mall: Okay.

"The Court: I think that you are doing your client an injustice and you are putting yourself, in my opinion, at great risk for a lot of different reasons . . . . I will tell you this, that if you do leave, I will default your client for failure to appear. I have not done that yet. I have not been requested to do that and at this point I am letting them proceed on the cross complaint. . . . I haven't granted [the motion for default] yet. That's why I advised you that if you physically leave then I will default [the plaintiff] for failing to appear because at this point she is represented. I'm not sure she has to be here. . . .

"Mr. Mall: Honestly, Your Honor, I don't need her here to ask questions. However, she is the client, she is the plaintiff, she is entitled to be in court if she so desires.

"The Court: She chose not to.

"Mr. Mall: I would like, if Your Honor please, if I may have five minutes just to call the client, see if I can reach her at home, and tell her what the circumstances are and give her instructions.

"The Court: All right. I'm not even going to take a recess. I'll sit on the bench. . . . Sheriff, if you will open that door for a minute and let's get a little air in here. I'll just wait on the bench.

[Mall left and called the plaintiff.]

"Mr. Mall: If Your Honor please, I was patched through by my office. They called her and she is not home.

"The Court: Okay.

\* \* \*

"Mr. Mall: If your Honor please, I've made a decision. I have to be consistent and I'm sincere and honest in what I have said, that I'm not prepared.

\* \* \*

"The Court: Okay. So I see you are packing up your gear. What does that mean? Does that mean you are actually leaving?

"Mr. Mall: Yes, sir. I think I should leave the premises because I don't want to waive any claims I might have.

"The Court: Well, I will entertain a motion for default for failure to appear once you have exited the courtroom, okay, because up until this point you have appeared. Your appearance is in the file and your physically being here is an appearance and it is not necessary that your client be here, as I perceive it, to have her interest protected. So you are choosing to leave. Then I will entertain a motion for default for failure to appear."

counsel refused to participate in the proceedings and walked out of the courthouse, thereby abandoning his client's cause. We cannot condone this conduct and, even more so, we cannot reward it with a new trial.

Mall was retained to protect his client's interests, but nevertheless elected to follow a course that the court warned would fatally jeopardize those interests. On appeal, the plaintiff, through her new counsel, argues that Mall's desertion of the case was the functional equivalent of withdrawing his appearance. This is ludicrous. Our rules of practice establish the procedures by which an attorney may withdraw his appearance. Practice Book § 77. Walking out of court is not included among the prescribed withdrawal methods, nor does the plaintiff provide authority for this claim. The plaintiff's reliance on *Matza* v. *Matza,* 27 Conn. App. 769, 610 A.2d 702 (1992), is no longer legally viable in that subsequent to the filing of the plaintiff's brief the Supreme Court reversed that judgment. See *Matza* v. *Matza,* 226 Conn. 166, 627 A.2d 414 (1993). Additionally, *Matza* was never factually apposite to the present case. *Matza* involved an attorney's written motion to withdraw during trial when he believed that his client was persisting in a criminal or fraudulent course of action.[4] There is no similarity between the *Matza* scenario and the facts of the present case.

Mall left the courtroom because, by his own statement, he was not prepared for trial. We can scarcely imagine the chaos if every attorney could control the docket through a self-help continuance obtained by walking out of the courtroom. The judges of the Supe-

---

[4] Rule 1.16 (b) of the Rules of Professional Conduct provides in pertinent part that "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

"(1) The client persists in a course of action . . . that the lawyer reasonably believes is criminal or fraudulent . . . ."

rior Court must remain in control of the scheduling and trial of cases. If an attorney disagrees with the scheduling order, he should make an appropriate record and then cooperate as well as the circumstances allow. If a claimed improper scheduling order prejudices his case, he may then seek relief by way of appeal.

Judge Karazin gave Mall every possible consideration. He allowed Mall to go to Stamford to get his file and gave him an opportunity to telephone his client in an attempt to secure her attendance at the proceedings. He suggested that Mall proceed on issues other than the American Express bills and clearly, in no uncertain terms, warned him of the consequences of his absenting himself from the proceedings.[5] We cannot easily conceive of what action, short of physically restraining Mall or exercising its contempt powers, the trial court could have taken to prevent the debacle caused by Mall's absence.

## II

The trial court awarded the plaintiff 60 percent of the family assets, lifetime alimony, joint custody of the four minor children, and child support. " 'In determining whether a trial court has abused its broad discretion in domestic relations matters, [the Appellate Court allows] every reasonable presumption in favor of the correctness of its action.' " *Ashton* v. *Ashton,* supra, 31 Conn. App. 742. The plaintiff has not persuaded us that the trial court abused its discretion in any of its orders.

The plaintiff also seeks reversal on the ground that the trial court failed to protect the plaintiff from her own attorney. The plaintiff claims that the trial court should have inquired into a possible conflict of interest between Mall and defense counsel's law firm. The

---

[5] See footnote 3.

plaintiff's claim of a possible conflict is based on specu-lation. Neither party has ever raised an issue concern-ing a possible conflict of interest. In support of her claim, the plaintiff points to a single sentence in the transcript in which Mall insists on a continuance because of a heavy schedule of trials, including one "of my own personal matter with [defense counsel's] office." This statement is subject to numerous interpre-tations and we will not speculate as to its meaning, especially where none of the parties raised such a claim at the trial level.

Finally, the plaintiff claims that the trial judge spoke ex parte with the defendant and his attorney before rendering a decision in this matter, thereby tainting the final outcome of the case. The plaintiff references the last page of the transcript of the March 10 trial wherein Judge Karazin concluded the case and defend-ant's counsel responded by saying, "May we go off the record for a minute." We will not find bias and mis-conduct on the part of the trial judge on the basis of this single, unsubstantiated reference to a possible ex parte communication. This is not an adequate record to support the plaintiff's claim.

In appeal no. 11464, the judgment of the trial court is affirmed.

### III

In appeal no. 12066, the defendant appeals from the trial court's postjudgment order requiring him to return to the plaintiff a motor vehicle that she was permitted to use under the terms of the original dissolution decree.[6] The defendant claims that a signed stipulation between the parties dated July 2, 1992, permitted the defendant to obtain title to the vehicle and thereafter

---

[6] Judge Karazin's order stated: "The leased Mercedes is to remain in the possession of the wife."

to obtain possession of it from the plaintiff.[7] Accordingly, in December, 1992, the defendant took possession of the vehicle. The plaintiff responded by filing a motion for order seeking return of the vehicle. The trial court, *Moran, J.,* granted the plaintiff's motion and ordered the automobile returned to her. The defendant argues that the trial court's order violated the automatic stay. We disagree.

Nothing in the July 2, 1992 stipulation permitted the defendant to obtain possession and use of the automobile. Although the stipulation allowed the defendant to pay off the lease and thereafter to acquire title to the automobile, he was not authorized to regain possession of the vehicle unilaterally in violation of the original dissolution agreement. The trial court's order requiring the defendant to return the motor vehicle to the plaintiff served to effectuate the original dissolution decree. Rather than violate the automatic stay, Judge Moran's order preserved the status quo under the dissolution decree by giving rightful possession and use of the motor vehicle to the plaintiff. Accordingly, in appeal no. 12066, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The parties agreed in their stipulation that proceeds derived from a deposit received in connection with the sale of the marital residence would be used to pay off a host of debts, one of which was for the motor vehicle in question.