[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried to the court on October 31, 2002. Thereafter, the parties filed post-trial briefs. After considering the evidence and the arguments of counsel, the court issues this memorandum of decision.
The plaintiff, William J. Bumster, filed a four count complaint, dated August 6, 1997. In the first count, he alleges that on July 26, 1994, the defendant, Winston Davis, a.k.a. Winston G. Davis, executed a promissory note, payable to Bumster, in the amount of $600.00. The plaintiff also alleges that the note remains unpaid despite Bumster's demand for payment, which was made on May 19, 1997.
In the second count, Bumster alleges that Davis executed another promissory note, payable to Bumster, on August 20, 1993, in the amount of $2,000.00, which similarly remains unpaid despite the plaintiffs demand for payment, which also was made on May 19, 1997. Bumster alleges that each note provides that if it becomes necessary to retain an attorney to pursue collection, Davis agreed to pay to the plaintiff reasonable attorney's fees and costs of collection.
In the third count, the plaintiff, an attorney, contends that Davis retained him, in a written agreement, to represent Davis in connection with a personal injury claim which stemmed from a March 14, 1992 automobile accident. According to the retainer agreement, copies of which were annexed to the complaint and presented as Plaintiff's Exhibit 3 at the trial, Davis agreed to pay Bumster a fee of "25% of any and all damages I may recover, whether by settlement or otherwise, in the above matter, plus necessary expenses." Bumster asserts that Davis owes to him the amount due for services rendered according to the retainer agreement.
Finally, in the fourth count, Bumster alleges that Davis requested representation in the accident case and agreed to pay a reasonable sum for services rendered, plus costs and expenses incurred in bringing suit CT Page 15934 in that matter. He seeks to recover from Davis the fair value of the work and services performed, plus costs and disbursements. Bumster also seeks prejudgment interest.
In response to the complaint, Davis filed his answer, dated September 23, 1997 (#117). As to the promissory notes, Davis admits that he executed them, that the demands for payment were made, and that they remain unpaid. He also admits that Bumster rendered services to Davis pursuant to the retainer agreement. As to Bumster's other allegations, Davis has left him to his proof.
Bumster and Davis were the only witnesses who testified at trial. Documentary evidence was also presented. The court makes the following findings and credits the following evidence, except as noted.
 I. The Promissory Notes
The promissory notes, Plaintiff's Exhibits 1 and 2, provide that, on demand, Davis promised to pay to Bumster the sums of $2,000.00 and $600.00, respectively. Neither note provides for the payment of interest. Each provides that, in the event of default, Davis is liable for the "costs of collection, including a reasonable attorney's fee." Attached to each promissory note is a copy of a check on Bumster's office checking account, made payable to Davis, in the amount of the note. Bumster loaned the money to Davis for use in Davis' work as a television repair technician. In his trial testimony, Davis admitted that he borrowed from Bumster the principal sums set forth in the promissory notes. He does not dispute that he is liable to pay the sums due on them.
Plaintiff's Exhibit 4 is a copy of letter, dated May 19, 1997, from Bumster to Davis, in which Bumster made demand on Davis for payment of $2,600.00, the total principal amount due under the notes. As discussed above, in his answer, Davis admitted that demand was made on that date. The court finds that Davis is liable to Bumster for the principal sums due on the promissory notes, $2,600.00.
In addition, pursuant to the terms of the promissory notes, Bumster claims attorney's fees, in the amount of $520.00, based on what he claims to be the "customary 20% award." See plaintiffs post-trial memorandum of law, p. 2.
"Where a contract expressly provides for the recovery of attorney's fees, an award under such a clause requires an evidentiary showing of reasonableness. . . . A trial court may rely on its own general knowledge CT Page 15935 of the trial itself to supply evidence in support of an award of attorney's fees. . . . Because the trial court is in a more advantageous position to evaluate the services of counsel than a reviewing court, [tlhe amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion." (Citations omitted and internal quotation marks omitted.) Rizzo Pool Co. v. Del Grosso, 240 Conn. 58,77-78, 689 A.2d 1097 (1997).
As our Supreme Court recently noted, the amount of time and labor spent is one factor which the court may consider in awarding a reasonable attorney's fee. See Shapero v. Mercede, 262 Conn. 1, 7, ___ A.2d ___ (2002). Another is the fee "customarily charged in the locality for similar legal services." Id., 262 Conn. 7 n. 4.
While the plaintiff has not itemized the services performed by his attorney in the pursuit of collection of the amounts due on the promissory notes, the court has before it the file. From that and its knowledge of the trial, it can estimate the number of attorney hours devoted thereto. See Appliances, Inc. v. Yost, 186 Conn. 673, 681 n. 5,443 A.2d 486 (1982).
Here, at the close of the evidentiary presentation at trial, the parties agreed to submit posttrial briefs in lieu of oral argument. As noted, in his brief, the plaintiff contends that the current customary fee is twenty per cent of the debt. The court may consider a contention in a brief as evidence in determining an attorney's fee award. SeeAppliances, Inc. v. Yost, supra, 186 Conn. 681. In his responding brief, Davis has not disputed the plaintiffs assertion concerning the customary fee.
Based on the evidence, including the file, the trial, and the post-trial memorandum submitted by the plaintiff, the court concludes that the amount requested as attorney's fees, $520.00, represents a reasonable attorney's fee in connection with the claims made on the promissory notes. Thus, this amount is found to be due to Bumster from Davis, in addition to the amounts due on the first and second counts, $600.00 and $2,000.00.
 II. The Retainer Agreement
As noted, in the third count of the complaint, relying on the retainer agreement, Bumster seeks an attorney's fee and reimbursement for costs incurred. Under Connecticut law, contingency agreements between attorneys and clients must comply with the requirements set forth in General CT Page 15936 Statutes § 52-251 c. There is no contention here that the retainer agreement (Plaintiff's Exhibit 3) does not so comply. See Gagne v.Vaccaro, 255 Conn. 390, 391, 766 A.2d 416 (2001).
In addition, in view of the confidential relationship which exists between attorney and client, agreements between them are subject to special scrutiny. "Contracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made during the relationship. . . . Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care and if there are doubts they will be resolved in favor of the client. . . . Nevertheless, an attorney is not prohibited from contracting with his client respecting his fees, and a contract thus made after the commencement of the relationship of attorney and client is not per se void but will by reason of the confidential nature of the relationship be closely scrutinized by the court. No undue advantage can be taken of the relationship of attorney and client in order to procure such a contract; but where the parties are free to contract, their agreement should not be set aside or the agreed compensation withheld unless fraud has been perpetrated, undue influence exerted, material facts affecting the subject matter misrepresented or suppressed, or advantage taken of a position of confidence and trust to obtain an unconscionable advantage over the party, in which case a court of equity may grant relief from such oppression, and the attorney will be confined to a reasonable charge for compensation without regard to the attempted fixation of the value of his services." (Citations omitted and internal quotation marks omitted.)Noble v. White, 66 Conn. App. 54, 58, 783 A.2d 1145 (2001).
Bumster has known Davis and members of his family for over twenty years. Bumster had represented Davis on other matters prior to the signing of the retainer agreement in March, 1992. After entering into the retainer agreement, under which Bumster agreed to pursue the personal injury claim for Davis, he filed a civil action, Davis v. McBride, Docket No. CV-94-0460588S, in the Superior Court at New Britain, in which he sought to recover damages for Davis. Eventually, he claimed the case to the trial list. Afterwards, he attended a pre-trial conference at the court house, at which an offer to settle Davis' claim for a total amount of $15,872.52 was presented. Bumster then communicated this proposal to Davis.[1]
Davis was not satisfied with the amount and requested Bumster to pursue lost earnings as part of the damages claims. Bumster declined to do, for ethical reasons. Bumster did not pursue the issue since he knew that CT Page 15937 Davis was not employed and was conducting his television repair business "under the table," without filing tax returns. Previously, in response to a discovery request, Davis had stated that he had no lost wages claim. Bumster was also concerned that, if a lost wages claim was presented, Davis would face exposure for income tax evasion.[2] In addition, the settlement value of the case was reduced by the fact that Davis' post-incident medical history included treatment unrelated to the March, 1992 accident.
The trial of Davis v. McBride, which had been scheduled, was postponed in order for Davis to retain a new attorney. Davis consulted with another attorney, who did not take the case. At the time of the new trial date, Davis did not have another attorney. In view of the conflict which had developed between Bumster and Davis, Bumster moved the court for permission to withdraw as Davis' attorney on the personal injury action. His motion to withdraw was granted. See partial transcript of proceedings of May 8, 1997, p. 25, annexed to Davis' memorandum of law.[3]
Thereafter, Davis accepted the previously made settlement offer and received the proceeds thereof. Bumster sent his demand letter of May 19, 1997 after his motion to withdraw was granted. Thereafter, on June 6, 1997, he filed in this court an application for a prejudgment remedy.[4]
 A. Duress
Before this court, Davis contends that he was compelled to accept the settlement of Davis v. McBride as a result of Bumster's breach of the retainer agreement, in that Bumster did not continue to represent Davis and take the case to trial. In effect, Davis advances the defense of duress. Practice Book § 10-50 lists duress as a defense which must be specially pleaded.
"The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." Bennettv. Automobile Ins. Co. of Hartford, 230 Conn. 795, 802, 646 A.2d 806
(1994). Practice Book § 10-50 provides that a special defense is to be utilized to plead facts which are consistent with plaintiffs statements of fact "but show, notwithstanding, that the plaintiff has no cause of action. . . ." Such facts "must be specially alleged" and may not be roved under either a general or special denial. Id. "Under our practice, when a defendant pleads special defense, the burden of proof on the allegations contained therein is on the defendant." Dubose v.Carabetta, 161 Conn. 254, 262, 287 A.2d 357 (1971).
However, at trial, no objection was made to Davis' testimony on the CT Page 15938 ground that no special defense alleging duress was filed. Accordingly, the court treats the failure to file a special defense as having been waived. See Statewide Grievance Committee v. Presnick, 216 Conn. 135, 137
n. 3, 577 A.2d 1058 (1990).
"For a party to demonstrate duress, it `must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim.' Barbara Weisman. Trustee v. Kaspar,233 Conn. 531, 549-50 n. 15, 661 A.2d 530 (1995). The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party' which makes it impossible for [the party] to exercise his own free will." (Internal quotation marks omitted.) Noblev. White, supra, 66 Conn. App. 59.
The court does not credit Davis' testimony to the effect that he was somehow compelled to settle Davis v. McBride because Bumster refused to take the case to trial. Davis testified that he had the opportunity to seek other counsel. As noted, the attorney whom he consulted declined to represent him on the matter. In his testimony, Davis acknowledged that the court permitted Bumster to withdraw as his counsel. This is confirmed by the transcript of the proceedings of May 8, 1997, cited above. Davis has not proved that Bumster committed a wrongful act. He has not shown that he had no reasonable alternative. He also has not shown that the resulting transaction, the settlement of Davis v. McBride, was unfair to Davis, in that the settlement which Davis agreed to and received the benefits of was for an amount less than his claim was actually worth. SeeBourquin v. Vuto, Superior Court, judicial district of Windham at Putnam, Docket No. CV97-0056274 (April 25, 2000, Potter, J.) (settlement not the product of duress).
Bumster did not breach the retainer agreement. "[T]he relationship between an attorney and client must involve personal integrity and responsibility on the part of the lawyer and an equal confidence and trust on the part of the client. . . . The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith." (Citations omitted; footnote omitted; and internal quotation marks omitted.) Matza v. Matza, 226 Conn. 166,183-184, 627 A.2d 414 (1993). Where such a relationship has broken down, the court will not require it to continue. "[A] strained and coerced relationship is inconsistent with the notion of the attorney-client relationship. The court should not perform such a shotgun wedding." Id., 184. CT Page 15939
As our Supreme Court has stated, in certain situations an attorney has an ethical duty to seek the court's permission to be relieved of his obligation to represent a client. "Trial counsel. had an ethical obligation to seek to withdraw from their representation of the defendant if they perceived any breach in their duty of undivided loyalty to their client or if any ethical rule would be violated by their continued representation. If an unforeseen conflict arises after representation has been undertaken, an attorney should withdraw from the representation of the client. [Rules of Professional Conduct, Rule 1.7, comment]; see also Rules of Professional Conduct, Rule 1.16." (Internal quotation marks omitted.) State v. Webb, 238 Conn. 389, 420-421, 680 A.2d 147 (1996).
Rule of Professional Conduct 1.16(a), concerning declining or terminating representation, provides, in pertinent part, "Except as stated in subsection (c) [concerning an order by a tribunal], a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) The representation will result in violation of the Rules of Professional Conduct or other law. . . ." Also, the rule further provides that an attorney may withdraw if "[t]he client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent. . . ." Rule of Professional Conduct 1.16(b) (1).
The Rules of Professional conduct do not permit an attorney to advance a frivolous issue. Rule of Professional Conduct 3.1 provides, in pertinent part, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." The commentary to the rule explains the meaning of "frivolous" in this context. An action is frivolous "if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." Commentary, Rule of Professional Conduct 3.1.
Here, Bumster reasonably concluded that he would be violating the Rules of Professional Conduct if he pursued the lost wages claim sought by Davis. Accordingly, when Davis persisted in seeking him to pursue the claim, he sought permission to withdraw, which was granted.
While an attorney who withdraws without good cause may forfeit a claim to a fee, that is not the situation before the court. See Beck Eldergill, P.C. v. Nevins, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV95-0551057 (May 20, 1997, Wagner, J.). There should be no penalty meted out to an attorney for CT Page 15940 compliance with the ethical obligations prescribed by the rules.
In addition, there is no evidence in the record to show that, after the conflict between Bumster and Davis developed, Davis did any work on his own to prepare the case. Rather, it was Bumster's preparation and pursuit of the case as Davis' attorney which resulted in the presentation of the settlement offer by the defense in Davis v. McBride. Where an attorney has represented a client in accordance with a contingent fee agreement, such as the retainer agreement in evidence here, resulting in a settlement accepted by the client, the attorney is entitled to be compensated. See Gagne v. Vaccaro, 255 Conn. 390, 410-411, 766 A.2d 416
(2001).
 B. Waiver
In his post-trial memorandum, p. 2, Davis contends that, on the record in Davis v. McBride, Bumster agreed that he was not entitled to a fee. This amounts to a claim that Bumster waived his right to a fee. Waiver was not raised as a special defense in Davis' answer to Bumster's complaint.
Certain special defenses are enumerated in Practice Book § 10-50 as among those which must be specially pleaded. While waiver is not listed in § 10-50, our Supreme Court has held that it must be pleaded as a special defense. See DelVecchio v. DelVecchio, 146 Conn. 188, 195,148 A.2d 554 (1959). An exception may be applicable. "Where . . . facts are sufficiently set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged." (Internal quotation marks omitted.) Jenkins v. Indemnity Insurance Co.,152 Conn. 249, 256, 205 A.2d 780 (1964). Here, the operative pleadings do not set forth facts which warrant such an inference. Davis' answer to the third and fourth counts, which concern the retainer agreement, simply left Bumster to his proof.
As noted, the argument that Bumster agreed to forego his fee was presented in Davis' post-trial memorandum of law. This brief was submitted, according to the schedule established at trial, after the submission of Bumster's memorandum. The court has not received an objection from Bumster to the raising of this contention in Davis' memorandum. Accordingly, the court treats the failure to file a special defense as having been waived. See Statewide Grievance Committee v.Presnick, supra, 216 Conn. 137 n. 3; Mountaindale Condominium Associationv. Zappone, 59 Conn. App. 311, 318, 757 A.2d 608, cert. denied,254 Conn. 947, 762 A.2d 903 (2000) (although cases apply the doctrine of waiver of the failure to file a special defense when no objection is made CT Page 15941 to the introduction of evidence during trial, the doctrine is also applicable in other contexts, such as when no objection is made to the statutory basis of a motion for summary judgment).
"Waiver is the intentional relinquishment of a known right." WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 251, 618 A.2d 506
(1992). "Whether conduct constitutes a waiver is a question of fact." (Internal quotation marks omitted.) Ford v. Ford, 72 Conn. App. 137,141-142, 804 A.2d 215 (2002); see Majernicek v. Hartford CasualtyInsurance Co., 240 Conn. 86, 96, 688 A.2d 1330 (1997).
Waiver "need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) Wadia Enterprises, Inc. v. Hirschfeld, supra,224 Conn. 251. "A waiver occurs, therefore, only if there is both knowledge of the existence of the right and intent to relinquish it."Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,777, 653 A.2d 122 (1995). "[Waiver] involves the idea of assent, and assent is an act of understanding. . . . Intention to relinquish may appear, but acts and conduct inconsistent with intention [to assert a right] are sufficient." (Internal quotation marks omitted.) Dichello v.Holgrath Corp., 49 Conn. App. 339, 349, 715 A.2d 765 (1998).
With those principles in mind, the court again refers to the transcript of May 8, 1997 in Davis v. McBride. After discussion of the settlement of Davis' claim against McBride, in which Davis agreed to sign a withdrawal and a release (see p. 24 of the transcript), the following colloquy with the court (Keller, J.) occurred:
"Mr. Bumster: May I ask the Court a question?
The Court: Yes.
Mr. Bumster: What about the time that I have worked on this file and what about my costs and so forth and so on?
The Court: Attorney Bumster, you can't have it both ways. You asked to get out, I let you out.
Mr. Bumster: All right, but I certainly am entitled to get my costs back for all the medical reports, the sheriffs fees, the entry fees.
The Court: All right. Then you take that up with Mr. Davis, Attorney Bumster. All right? (Whereupon, Court recessed.)" Transcript of May 8, CT Page 15942 1997, pp. 24-25.
Davis claims, based on this dialogue, that Bumster agreed that he was not entitled to a fee. "Examination of the transcripts is not dispositive of the issue. We were not there and the flavor of the court's remarks cannot be appreciated from reading the cold black and white lines of a transcript. The nuances of voice inflection, gestures and body English are invisible on the pages of a printed transcript." Hill v. Hill,35 Conn. App. 160, 165, 644 A.2d 951, cert. denied, 231 Conn. 914,648 A.2d 153, cert. denied, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603
(1994). In this context, Davis has not shown that Bumster's response of "All right" to the court's comment that Bumster could not have it "both ways," meant that Bumster agreed to forego the fee. After all, in the same sentence, Bumster stated that he believed that he was certainly entitled to recover his costs, to which the court responded, "All right. Then you take that up with Mr. Davis, Attorney Bumster. All right?" Bumster's "All right" response appears to have been a use of that familiar phrase similar to that employed twice in the same colloquy by the court. Use of the phrase by Bumster and by the court did not necessarily connote assent. For example, the court's first use of the phrase did not necessarily mean that the court agreed that Bumster was entitled to recover the costs. Rather, she suggested that he take up the issue with Davis and ended the dialogue by using the phrase "All right?" again, this time in the form of a question. Likewise, the court's use of the expression "you can't have it both ways," did not mean that the court had made a determination as to whether Bumster had a legal right to a fee, an issue which was not then before the court to adjudicate. The court's comment is dictum and "is not binding because it [was] made with no intent to lay down in positive form a rule of law." (Internal quotation marks omitted.) Sharp v. Zoning Board of Appeals,43 Conn. App. 512, 523, 684 A.2d 713 (1996).
The fact that Bumster did not intend, by his statements before the court, to agree that he was not entitled to a fee, is borne out by the fact that, less than one month after the court appearance before Judge Keller in New Britain, he filed his application for a prejudgment remedy in this court, in which he sought payment of the fee and reimbursement of costs. His affidavit, dated June 6, 1997, paragraphs 10-12, which was submitted in support of his application and which the court also judicially notices as part of the court's file, sought recovery of the fee. Thus, he took prompt action to recover it. This, then, is a not a case involving conduct which, through delay in pursuing one's rights, amounts to waiver thereof. See Dichello v. Holgrath Corp., supra,49 Conn. App. 350-352. CT Page 15943
Based on this record, Davis has not proved that Bumster agreed that he was not entitled to a fee. See Pomarico v. Gary Construction, Inc.,5 Conn. App. 106, 112, 497 A.2d 70, cert. denied, 197 Conn. 816,500 A.2d 1336 (1985) (affirming trial court's determination that there had been no waiver despite a statement before a different trial court).
Under the terms of the retainer agreement, Bumster is entitled to receive a fee amounting to 25% of the settlement amount, $15,872.52. Plaintiffs Exhibit 5 provides a summary of the settlement agreement, prepared by Bumster, which includes a calculation of Bumster's fee as resulting in the sum of $3,220.26, exclusive of expenses. This appears to be a compromised fee, somewhat below and not based on 25% of the settlement total, the acceptance of which by Davis would have meant that he would have received a net amount of $8,000.00 from the settlement.[5]
The sum of $3,220.26 is the amount which Bumster claims, in his post-trial memorandum, p. 2, is due. Accordingly, the court awards this lesser sum. In addition, the agreement provides that Davis also agreed to pay Bumster for the necessary expenses involved. Plaintiffs Exhibit 5 details these expenses, which amounted to $262.74.[6] Thus, the total amount due to Bumster from Davis as to the third count of the complaint, which pertains to the retainer agreement, is $3,483.00, representing the total of $3,220.26 plus $262.74.
 III. Interest
Bumster also seeks an award of prejudgment interest, pursuant to General Statute § 37-3a[7], at the rate often per cent per year, on the monies owed to him by Davis. In discussing § 37-3a, our Supreme Court recently has stated, "we have construed § 37-3a as permitting a trial court, in the exercise of its equitable discretion, to award prejudgment interest. . . . [A] necessary predicate for such an award is, however, a determination that the party against whom interest is to be awarded has wrongfully detained money due the other. . . ." (Citation omitted and internal quotation marks omitted.) State v. Lex Associates,248 Conn. 612, 628, 730 A.2d 38 (1999). Such interest is awarded "to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." (Internal quotation marks omitted.) Northropv. Allstate Insurance Co., 247 Conn. 242, 254-255, 720 A.2d 879 (1998).
"The determination is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. . . . A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from CT Page 15944 which interest should be calculated." (Citation omitted and internal quotation marks omitted.) Maloney v. PCRE, LLC, 68 Conn. App. 727, 755,793 A.2d 1118 (2002).
"The real question in each case is whether the detention of the money is or is not wrongful under the circumstances. . . . Although bad faith is one factor that the court may look at when deciding whether to award interest under § 37-3a, we note that, in the context of the statute, "wrongful' is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so. Ballentine's Law Dictionary (3rd Ed. 1969)." (Citation omitted.) Ferratov. Webster Bank, 67 Conn. App. 588, 596, 789 A.2d 472, cert. denied,259 Conn. 930, 793 A.2d 1084 (2002). "[D]etention can only be wrongful, however, from and after the date on which the court, in its discretion, determines that the money was due and payable." Northrop v. AllstateInsurance Co., supra, 247 Conn. 255. Similarly, "[u]nder this statute, interest ordinarily begins to run from the time when the money was due and payable." Marcus v. Marcus, 175 Conn. 138, 146, 394 A.2d 727 (1978).
As to the promissory notes, Davis has conceded that he borrowed the funds memorialized in them and that repayment was not made. Davis' detention of the funds due on the notes had no legal basis and was wrongful. Accordingly, Bumster is entitled to an award of interest as to the money due under the notes. Such interest runs from the date of the demand for payment, May 19, 1997. See Goldman v. Coppola, 149 Conn. 317,328, 179 A.2d 817 (1962); Kozienieski v. Whitcomb, 29 Conn. Sup. 110,114-115, 273 A.2d 895 (1970).
"[C]ourts have upheld a trial court's refusal to award such damages where the trial court found that the party who had detained moneys had made good faith arguments in defense of its actions; Maluszewski v.Allstate Ins. Co., 34 Conn. App. 27, 39, 640 A.2d 129, cert. denied,229 Conn. 921, 642 A.2d 1214 (1994); or where the trial court found that the defendant improperly withheld moneys under a good faith belief, bolstered by the advice of counsel, that an agreement was enforceable.Hove v. DeWolfe Co., 61 Conn. App. 558, 564, 764 A.2d 1269 (2001)."Maloney v. PCRE, LLC, supra, 68 Conn. App. 756. Davis' refusal to pay Bumster the agreed-upon percentage of the settlement amount and to reimburse him for the costs incurred is based on the above-quoted colloquy which occurred in court at the time of the settlement of Davisv. McBride. Apparently, since he is represented by counsel in this action, Davis is also acting under his counsel's advice. In view of the colloquy, there are good faith bases for the argument made in defense of Davis' actions and for the belief that Davis was not obligated to pay the fee and costs to Bumster. Under the circumstances, the court concludes CT Page 15945 that Bumster is not entitled to an award of interest as to his claims under the retainer agreement.
As of May 19, 1997, the principal debt on the promissory notes was $2,600.00. Through May 18, 2002, the interest on this sum, at the rate of 10% per year is $1,300.00 ($2600.00 x .10 $260.00 x 5 years $1,300.00). Per diem interest of $147.68 ($260.00 divided by 365 days equals $0.71 per day x 208 days $147.68) has accumulated from May 19, 2002 through the date of this memorandum of decision, for a total interest award of $1,447.68.[8]
 IV. Quantum Meruit
As discussed, in the fourth count, Bumster seeks to recover for the reasonable value of the services he performed for Davis in connection with the accident case. Thus, this claim is based on the theory of quantum meruit. The lack of a remedy under a contract is a precondition to recovery premised on quantum meruit. See Gagne v. Vaccaro, supra,255 Conn. 401; United Coastal Industries, Inc. v. Clearheart ConstructionCo., Inc., 71 Conn. App. 506, 512-513, 802 A.2d 901 (2002). Since the court has found that Bumster has a contractual remedy under the retainer agreement, as set forth above in the discussion concerning the third count, he is not entitled to relief under the fourth count.
 CONCLUSION
For the reasons set forth above, the court finds the issues in favor of the plaintiff, except as to the fourth count. Judgment may enter for the plaintiff in the following amounts: as to the first count, $600.00; as to the second count, $2,000.00; plus $520.00 for attorney's fees on these counts; as to the third count, $3,483.00. Interest in the amount of $1,447.68 is also awarded, for a total judgment in the amount of $8,050.68, exclusive of the costs of this action. It is so ordered.
BY THE COURT
 ___________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT